No. 85,431

STATE OF KANSAS, *Appellee*, v. TERRY LEE GILBERT, *Appellant*.

(32 P.3d 713)

Opinion filed October 19, 2001.

*Allen B. Angst*, of Abilene, argued the cause and was on the brief for appellant.

*Ellen H. Mitchell*, county attorney, argued the cause, and *Carla J. Stovall*, attorney general, was with her on the brief for appellee.

The opinion of the court was delivered by

LARSON, J.: Terry Lee Gilbert was convicted by a jury of first-degree felony murder, K.S.A. 21-3401(b), aggravated robbery, K.S.A. 21-3427, aggravated burglary, K.S.A. 21-3716, and criminal damage to property, K.S.A. 21-3720. His appeal challenges statements made after a claimed invocation of right to counsel, refusal to allow cross-examination of a witness as to the reputation of the victim, claimed failure to be provided with a copy of exhibits admitted in evidence, and the trial court's failure to instruct on lesser included offenses of felony murder. Our jurisdiction is pursuant to K.S.A. 22-3601(b)(1) (imposition of maximum sentence of life imprisonment).

This is a companion case to *State v. Branning*, 271 Kan. 877, 26 P.3d 673 (2000), and while the issues on appeal differ somewhat, the facts of the underlying crimes are the same.

On September 16, 1998, Jarold (Jerry) Johnson was found dead in his residence in Salina, Kansas.

While officers investigating the crime were interviewing Margaret Kelso, a potential witness, Terry Gilbert arrived at her home. Kelso had told the officers that Gilbert was potentially involved in the death of Johnson. The officers asked Gilbert if he would talk to them. Gilbert initially agreed, but after being asked to go to the police station he stated that he would not talk without his attorney. When asked if he had an attorney, Gilbert replied he did not.

One of the officers contacted his supervisor, and Gilbert was arrested for the murder of Johnson. While being transported to the police station, Gilbert initiated a conversation with the officers but was told that they could not answer any of his questions because he had already requested an attorney and any conversation might lead to an incriminating response. Gilbert stated, "Well, I'll talk with you either way. I'll say the same thing either with an attorney there or not. I just said that I wanted an attorney because I don't want to go to jail because that's what Louis Brouillard did." Gilbert then claimed he was willing to talk because he did not commit the crime. One of the officers told Gilbert that he needed to wait until they were at the police department before they could discuss the matter further.

After obtaining preliminary information from Gilbert, the investigators read him his *Miranda* rights. Gilbert placed his initials next to each right, signifying that he understood them. He also signed and dated the *Miranda* form. One of the investigators requested that Gilbert write out in his own words that it was his desire to make contact with and speak to the police. Gilbert wrote on the waiver form: "I am willing to be questioned by detectives without [an] attorney present at this time" and again signed his name underneath.

In the interview that followed, Gilbert eventually admitted to being involved in the killing of Johnson. He claimed that Johnson owed him $25 and he decided to attempt to collect it one evening

when he needed money for beer. He had Louis Brouillard drive him over to Johnson's house. By himself, Gilbert said he approached the home and knocked on the door. Johnson answered, but refused to talk to him and slammed the door in his face. Gilbert then kicked open the door and confronted Johnson. Gilbert claimed he pushed Johnson, and Johnson fell and hit his head on the coffee table. Johnson began making strange breathing noises. Gilbert became scared and left, claiming he took nothing from the residence.

The officers later videotaped a second interview with Gilbert where the same story was repeated. The officers asked Gilbert if he would write a note to Brouillard advising him to be truthful because he had already confessed. In compliance, Gilbert wrote a note stating: "Louis they know I did it don't lie to protect me. Terry."

One additional interview was held with Gilbert after he signed an additional waiver of rights, but then he said he wanted an attorney appointed. Before the officers could say anything further, Gilbert stated, "Can I tell you one thing? Someone did go back into the house." He then said it was not himself or Brouillard. When asked if it was Garret Harris or Ronald Branning, Gilbert responded "no." Gilbert also stated multiple times that he had bought two cartons of Marlboro cigarettes for $10. There were no further interviews or statements.

Prior to trial, Gilbert moved to suppress statements made in all of his interviews. A hearing was held and the motion was denied.

At trial, Garret Harris testified on behalf of the State pursuant to a plea bargain. He stated that several individuals went over to Johnson's house and that prior to entering the home they all placed socks over their hands. Gilbert broke down the door and Gilbert, along with Brouillard, severely beat Johnson. Harris further testified that they ransacked the house, stealing both money and cartons of cigarettes.

Gilbert testified in his own defense. His version was substantially the same as that given to the officers during his initial interview. Gilbert was found guilty by the jury of felony murder, aggravated

robbery, aggravated burglary, and criminal damage to property. Additional facts will be discussed as they relate to particular issues.

*Motion to suppress*

Gilbert first contends the trial court erred in failing to suppress his statements made during his interviews with the police. He alleges that the three interviews were in fact one continuous interview and the failure to honor his initial request for an attorney was a violation of his Sixth Amendment right to counsel.

The first consideration is the State's contention that Gilbert did not properly preserve this issue for appeal because no contemporaneous objections were made at the time his statements were offered into evidence. We have consistently held that "[w]hen a pretrial motion to suppress has been denied, the moving party must object to introduction of the evidence at trial in order to preserve the issue for appeal." *State v. Jones*, 267 Kan. 627, 637, 984 P.2d 132 (1999).

The only objection made was to the introduction of the videotape from the second interview which was lodged after the unrecorded interview was thoroughly discussed. Proper objections must be timely and specific in order to preserve an issue for appeal. *State v. Sims*, 265 Kan. 166, 174-75, 960 P.2d 1271 (1998).

While Gilbert might argue that his single objection is sufficient to preserve this issue, his arguments likewise fail when considered on the merits. Gilbert volunteered his side of the story and made many of the statements even after the officers told him that he should not do so. Although he later contended he was impaired when arrested, there was no showing of intoxication when arrested or during subsequent interviews. The trial court properly found Gilbert's testimony of his condition was not credible. The motion to suppress was properly denied, and the testimony in the main was admitted without objection.

*Cross-examination on reputation of victim*

Gilbert again cites the Sixth Amendment in contending the trial court violated his right to a fair trial by refusing to allow him to delve into the character of the victim. He contends that showing

the victim's dishonest character would have bolstered his defense that he was at the victim's house only to collect unpaid wages.

In actuality, Gilbert's claim that Johnson owed him money was not in dispute. The only question was whether Gilbert broke into the victim's house with the intent to commit robbery. Whether he believed he was lawfully owed money is irrelevant.

We have held that "[t]he taking of money by force or intimidation, even for the purpose of applying it to the payment of an alleged debt" is not a defense to robbery or theft. *State v. Russell*, 217 Kan. 481, 484, 536 P.2d 1392 (1975). The trial court was within its discretion in refusing to allow the victim's reputation to become an issue in the trial. This contention is without merit.

*Examination of exhibits*

Gilbert next argues that he should have been granted a mistrial under K.S.A. 22-3423, because he was not provided with two photographs of Brouillard's truck and a photocopy of a picture of money spread out on a table that was found during a search of Brouillard's residence. All three photos were admitted into evidence. At trial, he argued under *State v. Adam*, 257 Kan. 693, 896 P.2d 1022 (1995), that the failure of the State to furnish him with copies of these exhibits was prejudicial error.

The State contends its files and all exhibits were open to the defense for examination. It called the officer in charge of handling all the evidence in the case. The officer testified that all the State's evidence was made available to the defense investigator when he requested it. The defense counsel agreed on the record at the time of trial that the State's open file system existed, and the prosecutor had complied with the ongoing discovery request.

It is clear that the exhibits about which Gilbert complains were available to him. Counsel failed below to show any violation of Gilbert's rights or to articulate any prejudice to Gilbert. He again fails to do so on the appeal. Having not articulated any prejudice, this argument must fail.

*Lesser included offense instructions*

Gilbert finally argues that he was prejudiced by the trial court's failure to give lesser included offense instructions for felony mur-

der. He contends that because of this error, the jury was confused and unable to consider a lesser charge. In actuality, Gilbert was charged with first-degree murder on both theories of premeditated murder and felony murder. The complained of instruction referred only to "first-degree murder" which could be construed to include both theories, but we will consider this issue as raised by Gilbert's brief on appeal.

Gilbert is incorrect to cite and rely upon the second prong of the test announced in *State v. Fike*, 243 Kan. 365, 368, 757 P.2d 724 (1988), which has been overruled by an amendment to K.S.A. 21-3107 effective July 1, 1998. See K.S.A. 2000 Supp. 21-3107; *State v. Hunt*, 270 Kan. 203, 211, 14 P.3d 430 (2000) ("The second prong of the *Fike* test was eliminated in 1998 by an amendment to K.S.A. 21-3107.") The crimes for which Gilbert was charged and convicted occurred in September 1998, making the second prong of *Fike* inapplicable. Gilbert's citation to *Fike* and its subsequent progeny of case law need not be given any further consideration.

The appropriate standard for reviewing whether the jury should be instructed on lesser included offenses for felony murder was recently stated in the appeal of Gilbert's codefendant:

> " 'When murder is committed during the commission of a felony, the rule requiring instructions on lesser included offenses does not apply. The felonious conduct is held tantamount to the elements of deliberation and premeditation which are otherwise required for first-degree murder. *It is only when the evidence of the underlying felony is weak, inconclusive, or conflicting that instructions on lesser included offenses may be required.* [Citation omitted.]' " (Emphasis added.) *Branning*, 271 Kan. at 887 (quoting *State v. Strauch*, 239 Kan. 203, 218, 718 P.2d 613 [1986]).

The underlying felonies for which Gilbert was charged and convicted were aggravated burglary and aggravated robbery. The evidence concerning the elements of both crimes was strong and convincing.

Gilbert's testimony that his conduct was justified by attempting to collect a $25 debt is not convincing. His excuse for his actions is unavailing and the testimony clearly shows the following: Johnson's door was forcibly kicked open, Gilbert admitted he broke into the home and shoved the victim, and Johnson was assaulted and

cigarettes and money were taken from his home. The evidence of the underlying felonies is not weak, inconclusive, or conflicting. Gilbert's argument that the lesser included offenses for felony murder should have been instructed upon is without merit.

Affirmed.